UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
ANGELA BURNS-RAMIREZ,               )
                                    )
         Plaintiff,                 )
                                    )
    v.                              )    Civil Action No. 12-1720 (RMC)
                                    )
JANET NAPOLITANO, Secretary,        )
Department of Homeland Security     )
                                    )
         Defendant.                 )
_____ )

## OPINION

Angela Burns-Ramirez, a former Secret Service employee, brought suit claiming harassment and discrimination based on her gender and her race (African American) and retaliation when she complained. These claims are based in part on allegations that she was subject to adverse employment actions when her Top Secret Security Clearance was suspended twice and later revoked. Defendant moves to dismiss in part, asserting *inter alia* that all claims regarding the Security Clearance are non-justiciable. The motion will be granted with regard to claims that challenge decisions to investigate, suspend, and/or revoke the Security Clearance of Ms. Burns-Ramirez. However, the motion will be denied with regard to claims asserting that agency employees acted with illegal discriminatory or retaliatory motive by knowingly reporting false information about her to the security division of the Secret Service.

## I. FACTS

When she retired in October 2012, Ms. Burns-Ramirez was a GS-14 employee who had been employed by the Secret Service for almost three decades. This suit relates to events that occurred during her last three years with the Service. The Amended Complaint [Dkt. 7] alleges as follows:

1

(1) In 2009, Ms. Burns-Ramirez bid on twelve different GS-15 positions but was not selected due to her gender and race.

(2) In 2009 and 2010, she received low performance evaluations that were undeserved and discriminatory.

(3) In July 2010, she complained that her first- and second-line supervisors subjected her to harassment and retaliation. The Service did not investigate her complaint as they did when a white woman complained.

(4) On March 2, 2011 Secret Service Agents came to her home and confiscated her weapon, handcuffs, radio, commission book, government car, government computer, and official credentials; on March 8, 2011, the Service suspended her Top Secret Security Clearance. About two weeks later, the Service reinstated her Security Clearance.

(5) On June 15, 2011 Ms. Burns-Ramirez's Security Clearance was suspended again.

(6) On September 19, 2011 her Security Clearance was revoked. Because a Security Clearance is mandatory for a Secret Service Agent and she no longer had one, Ms. Burns-Ramirez retired, effective October 1, 2012.

(7) Ms. Burns-Ramirez alleges that the investigation, suspension, and revocation of her Security Clearance were due to co-workers' false statements about her—statements they made with discriminatory and/or retaliatory motive, knowing them to be false.

Ms. Burns-Ramirez now sues the Department of Homeland Security, asserting illegal discrimination and retaliation by its constituent agency, the Secret Service. The Amended Complaint asserts six counts:

Count I – Race discrimination in violation of Title VII of the Civil Rights Act, 42 U.S.C. 2000e, *et seq*. (Title VII);

Count II – Retaliation in violation of Title VII;

Count III – Gender discrimination in violation of Title VII;

Count IV – Hostile work environment in violation of Title VII;

Count V – Discrimination in violation of 42 U.S.C. § 1983; and

Count VI – Discrimination in violation of 42 U.S.C. § 1981.

The Secret Service filed a motion for partial dismissal [Dkt. 10], contending that (1) all claims relating to Ms. Burns-Ramirez's Security Clearance are non-justiciable and (2) Counts V and VI must be dismissed because Title VII provides the exclusive remedy.[1] Ms. Burns-Ramirez concedes that Counts V and VI can be dismissed with prejudice, *see* Resp. [Dkt. 12], but insists that all claims regarding her Security Clearance should go forward. *See* Opp'n [Dkt. 13]. The motion to dismiss claims relating to the Security Clearance will be granted in part.

## II. LEGAL STANDARD

A motion to dismiss claims as nonjusticiable is a motion to dismiss for lack of jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). When reviewing such a motion, a court must review the complaint liberally, granting the plaintiff the benefit of all inferences that can be derived from the facts alleged. *Barr v. Clinton*, 370 F. 3d 1196, 1199 (D.C. Cir. 2004). Nevertheless, "the court need not accept factual inferences drawn by plaintiffs if those inferences are not supported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions." *Speelman v. United States*, 461 F. Supp. 2d 71, 73 (D.D.C. 2006).

---

[1] *See Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 835 (1976) (holding that Title VII provides the exclusive remedy for claims of discrimination in federal employment).

However, a court may consider materials outside the pleadings. *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1107 (D.C. Cir. 2005). The party claiming subject matter jurisdiction bears the burden of demonstrating that such jurisdiction exists. *Khadr v. United States*, 529 F.3d 1112, 1115 (D.C. Cir. 2008); *see Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994) (noting that federal courts are courts of limited jurisdiction and "[i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction.") (internal citations omitted).

### III. ANALYSIS

The Secret Service asserts that the Security Clearance claims are nonjusticiable under Supreme Court law established in *Navy v. Egan*, 484 U.S. 518 (1988). Mr. Egan was hired by the Navy as a laborer, contingent upon his obtaining a security clearance. Because he had a prior criminal record and a history of alcoholism, clearance was denied. Mr. Egan objected, asserting the Navy that he had paid his debt to society for his crimes and that he had not abused alcohol for three years. The only position available required a security clearance, and thus the Navy removed Mr. Egan from its employment. Mr. Egan sought review by the Merit Service Protection Board (MSPB). MSPB determined that it had no authority to review the merits of the security clearance determination; on appeal, the Federal Circuit reversed. The Supreme Court granted certiorari and held that MSPB lacked authority to review the clearance decision because such decisions are within the sole province of the Executive. 484 U.S. at 527-30. The Government has a compelling interest in withholding national security information from unauthorized individuals and the authority to protect such information rests in the Executive Branch. *Id*. at 527. Accordingly, the Court explained:

> [T]he protection of classified information must be committed to the broad discretion of the agency responsible, and this must include broad discretion to determine who may have access to it.

> Certainly, it is not reasonably possible for an outside nonexpert body to review the substance of such judgment and to decide whether the agency should have been able to make the necessary affirmative prediction with confidence. Nor can such a body determine what constitutes an acceptable margin of error in assessing potential risk. The Court accordingly has acknowledged that with respect to employees in sensitive positions there is a reasonable basis for the view that an agency head who must bear responsibility for the protection of classified information committed to his custody should have the final say in deciding whether to repose his trust in an employee who has access to such information. As noted above, this must be a judgment call.

484 U.S. at 529 (quotations and citations omitted). Because national security policy is in the province and responsibility of the Executive Branch, courts have been reluctant to intrude. *Id*. at 529-30.

The D.C. Circuit has applied *Egan* in Title VII cases, finding that judicial review of adverse employment actions is barred when the issue is denial or revocation of a security clearance. *See Bennett v. Chertoff*, 425 F.3d 999, 1001 (D.C. Cir. 2005); *Ryan v. Reno*, 168 F.3d 520, 524 (D.C. Cir. 1999). Even so, the D.C. Circuit has carved out a narrow exception: a plaintiff may proceed on a Title VII claim alleging that agency employees, motivated by discriminatory or retaliatory animus, falsely reported the plaintiff to the agency's security division, knowing the report was false. *Rattigan v. Holder* (*Rattigan I*), 643 F.3d 975 (D.C. Cir. 2011), *aff'd on rehr'g*, 689 F.3d 764 (D.C. Cir. 2012) (*Rattigan II*). The Circuit decided that this exception does not conflict with *Egan* because *Egan* shields from judicial review only decisions by security division employees who are trained and authorized to make security clearance determinations, not the actions of other employees who refer matters to the security division. *Rattigan I*, 643 F.3d at 983.

In its motion for rehearing of *Rattigan I*, the Government argued that judicial review of employee reports to security would chill such reporting, contrary to national security

5

policy. *Rattigan II*, 689 F.3d at 766. Executive Order 12,968 provides that employees with access to classified information "are encouraged and expected to report *any information* that raises doubts as to whether another employee's continued eligibility for access to classified information is clearly consistent with the national security." Exec. Order No. 12,968 § 6.2(b), 60 Fed. Reg. 40,245, 40,253 (Aug. 2, 1995). Due to the seriousness of the issue raised, the panel agreed to rehear the matter, especially with regard to the allegation that potential Title VII liability would chill the reporting of security concerns. *Rattigan II*, 689 F.3d at 767.

The Circuit reaffirmed *Rattigan I*, finding that *Egan* bars courts from reviewing only security clearance-related decisions made by trained security personnel and does not bar courts from reviewing the decisions of nonexpert employees who merely refer a matter to security. *Id*. at 767-68. To avoid the risk of chill, however, *Rattigan II* imposes a scienter requirement—a Title VII claimant may proceed "only if he can show that agency employees acted with retaliatory or discriminatory motive in reporting or referring information that they *knew* to be false." *Id*. at 771 (emphasis added). Because security is not aided by the reporting of false information, the Circuit ruled that suits alleging *knowing* false reporting would not impede the acquisition of useful information. *Id*. at 770.

In *Rattigan II*, the Government expressed concern that plaintiffs would "simply allege knowing falsity in every case." *Id*. at 770. The Circuit found this concern insufficient to justify "sweeping immunity from Title VII," noting that "though allegations of knowing falsity may be easy to make, they are, in our experience, far from easy to prove. If this evidentiary difficulty fails to deter unfounded claims, district courts can be counted upon to weed them out at summary judgment." *Id*. at 771.

6

The Secret Service attempts to distinguish *Rattigan I* and *II* from this case by pointing out that Mr. Rattigan's clearance was never actually revoked. The FBI initiated a security clearance investigation, determined that there was no security risk, and closed the investigation. *Rattigan I*, 643 F.3d at 979. The Secret Service reasons that the *Rattigan* decisions were grounded on this critical fact—"[b]ecause his security clearance was not revoked, the Court concluded that a judicial inquiry into the propriety of the referrals to the Security Division would not implicate the merits of a decision to revoke a security clearance." Reply [Dkt. 15] at 3. Because Ms. Burns-Ramirez's Security Clearance was revoked, the Secret Service insists that permitting her clearance-related claims to go forward would necessarily and improperly require the Court to look into the merits of the revocation decision. The Service argues that "to second–guess the reasons for the supervisory referral, or any investigation or review that resulted from the referral, would be akin to second-guessing [the security division's] decision to revoke her [Top Secret Security Clearance]." *Id*. at 4.

The Secret Service misinterprets the case law. While it is true that Mr. Rattigan's security clearance was not revoked, the reasoning of *Rattigan I* and *II* was not in any way based on this fact. The D.C. Circuit carefully balanced the need for security against a Title VII claimant's rights, explaining "it is our duty not only to follow *Egan*, but also to preserve to the maximum extent possible Title VII's important protections against workplace discrimination and retaliation." *Rattigan II*, 689 F.3d at 770. The Circuit achieved this compromise by declaring that a Title VII claimant may proceed only on a claim that an agency employee acted with retaliatory or discriminatory motive when knowingly reporting or referring false information to security. *Id*. at 771.

The Secret Service also argues that courts do not have jurisdiction to hear a claim challenging the "underlying referral or initiation" of a security investigation, relying on decisions from other circuits. *See* Reply at 4-5 (citing *Hill v. White*, 321 F.3d 1334 (11th Cir. 2003); *Becerra v. Dalton*, 94 F.3d 145 (4th Cir. 1996); *Panoke v. U.S. Army Military Police Brigade*, 307 F. App'x 54 (9th Cir. 2009)). The underlying facts in those cases are not clear. *Hill* and *Becerra* held that the "initiation" of a security investigation was unreviewable, *see Hill*, 321 F.3d at 1335-36, *Becerra*, 94 F.3d at 148-49; and *Panoke* held that "circumstances surrounding" a clearance revocation were unreviewable. *Panoke*, 307 F. App'x at 56. These cases may have dealt with security personnel decisions to investigate (decisions that are not reviewable under *Egan*) or they may have dealt with referrals to security by non-security personnel (decisions that are reviewable under *Rattigan I* and *II*).

Even if *Hill*, *Becerra*, and *Panoke* in fact dealt with referrals to security by non-security personnel, this Court is bound by D.C. Circuit precedent. *Rattigan I* and *II* are clear that security personnel decisions regarding whether to investigate, suspend, or revoke a clearance are protected from review, but the actions of other employees who knowingly and falsely refer a matter for investigation due to discrimination or retaliation are not protected from review.

The Amended Complaint here makes claims that are barred by *Egan* and claims that may proceed under *Rattigan I* and *II*. To the extent that Ms. Burns-Ramirez challenges decisions by security personnel to investigate, suspend, or revoke her Security Clearance, *Egan* makes such claims nonjusticiable, and the Court lacks jurisdiction to address them. However, to the extent that she challenges the actions of Secret Service employees who allegedly acted with discriminatory or retaliatory motive by knowingly making false reports to security, such claims

8

may proceed. The Court expresses no opinion whether such claims will pass muster on summary judgment.

## IV.  CONCLUSION

For the reasons stated above, the motion to dismiss filed by the Secret Service [Dkt. 10] will be granted in part and denied in part. The Court lacks jurisdiction to review claims based on the decisions of security personnel to investigate, suspend, or revoke Ms. Burns-Ramirez's Security Clearance, and her claims based on these allegations will be dismissed. On the other hand, claims based on the actions of Secret Service employees who allegedly acted with discriminatory or retaliatory motive by making false reports to security, knowing that such reports were false, may proceed. Further, by agreement of the parties, Counts V and VI will be dismissed with prejudice. A memorializing Order accompanies this Opinion.

Date: August 27, 2013

/s/
ROSEMARY M. COLLYER
United States District Judge